**Josephine E. DOLATOWSKI,**
**Appellant–Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, a New Jersey Corporation, Randall Minas, individually and as an Employee of Merrill–Lynch, and Cynthia Flores, individually and as an Employee of Merrill–Lynch, Appellees–Defendants.**

**No. 45A03–0311–CV–471.**

Court of Appeals of Indiana.

May 18, 2004.

Josephine E. Dolatowski, Merrillville, IN, Appellant Pro Se.

Frederick J. Ball, Highland, IN, Peter A. Cantwell, Paul H. Scheuerlein, Cantwell & Cantwell, Chicago, IL, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Josephine E. Dolatowski appeals the trial court's decision denying her motion for a change of venue from the county, arguing that because of her past political involvement, a fair trial in Lake County is impossible. Moreover, Dolatowski challenges the dismissal of her claims against appellees-defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., Randall Minas, and Cynthia Flores (collectively, Merrill Lynch) for violation of fiduciary duties (Count I), deception (Count II), lost financial opportunities (Count III), and deceptive practices (Count V), claiming that the statute of limitations on these claims was tolled by Merrill Lynch's conduct. Dolatowski also avers that the trial court erred when it entered summary judgment for Merrill Lynch on her claim for conversion (Count IV) because genuine

issues of material fact remained as to whether Merrill Lynch breached a duty it owed to her when it turned over $12,883.07 from her account to her mother's estate. Concluding that the trial court did not err in denying Dolatowski's motion for a change of venue; in dismissing Counts I, II, III, and V; and entering summary judgment against Dolatowski on Count IV, we affirm.

## FACTS

This case began in the late 1980s when former Lake County Sheriff Rudy Bartolomei pleaded guilty to firearm charges and assisted the United States Attorney in investigating corruption in Lake County. The U.S. Attorney eventually indicted over a dozen Lake County judges, commissioners, police officers, and attorneys. In a famous photograph Bartolomei—being led out of the federal courthouse by United States Marshals—is dressed in a Halloween skeleton's mask to hide his identity, as he was entering the Federal Witness Protection Program. Dolatowski—then active in Lake County politics—assisted the U.S. Attorney in his investigation, which was eventually dubbed Operation Lights Out. In addition to her involvement with Operation Lights Out, Dolatowski also served as a member of the Merrillville Plan Commission and Board of Zoning Appeals.

On May 19, 1989, Dolatowski—on behalf of her mother, Pauline Rondinelli—delivered a letter to Flores, an employee of Merrill Lynch. The letter ordered Merrill Lynch to sell Rondinelli's bonds and, with the proceeds, create a check payable to Dolatowski. The letter stated that, in exchange for the proceeds, Dolatowski had executed a promissory note in Rondinelli's favor, and that note provided that certain heirs of Rondinelli's would be paid sums by Dolatowski.[1] Because only the holder

---

1. We note that the term heirs is defined by Indiana Code section 29–1–1–13 as persons

of an account could be issued a check, Merrill Lynch transferred Rondinelli's bonds to Dolatowski's account, sold the securities, and issued Dolatowski a check.

On July 12, 1989, Rondinelli died. In accord with the promissory note issued in Rondinelli's favor, Dolatowski paid Rondinelli's heirs $51,377.48. In the fall of 1989, Dolatowski requested a copy of the letter she had given to Merrill Lynch on May 19, 1989. The letter Dolatowski received, however, was different than the letter she submitted. Specifically, the original letter had been altered on a typewriter, though Rondinelli's original signature remained. Dolatowski delivered copies of this letter to the Rondinelli heirs.

Attorneys for the Rondinelli heirs requested copies of all documents used in the transfer of funds from Rondinelli to Dolatowski, and they received the *original* letter that had been delivered on May 19, 1989, but with typewriter additions and deletions evident. Thereafter, the Rondinelli heirs filed a complaint against Dolatowski for conversion of Rondinelli's estate. The trial court found that Dolatowski had converted Rondinelli's estate and ordered Dolatowski to return the assets she had taken, along with interest and attorney fees, for a total approximating $175,000. On January 12, 2000, Dolatowski found a note dated September 13, 1989, informing her of the transfer from Rondinelli's account to her account. According to Dolatowski, [i]t was only then that Dolatowski realized that Merrill–Lynch [sic] had, in fact, forged the letter. Appellant's Br. p. 5. On August 20, 2002, Dolatowski filed her initial complaint.

On November 4, 2002, Dolatowski filed her motion for change of venue from the county under Trial Rule 76.[2] Specifically,

Dolatowski alleged that political prejudice would cause her to receive an unfair trial. The trial court denied Dolatowski's motion on December 26, 2002.

On March 27, 2003, Merrill Lynch filed a motion to dismiss Counts I, II, III, and V. Specifically, Merrill Lynch noted that the statute of limitations on all of Dolatowski's claims had run, as Dolatowski's complaint itself stated that she was given a copy of the allegedly fraudulent letter on or about September 15, 1989, over fourteen years ago. Moreover, Merrill Lynch averred that no special relationship existed between Merrill Lynch and the plaintiff, as a broker's duty is simply to buy and sell. Appellee's App. p. 74. On June 10, 2003, the trial court granted Merrill Lynch's motion to dismiss Counts I, II, III, and V, finding that Dolatowski's claims were time-barred.

On May 2, 2003, Merrill Lynch filed a motion for summary judgment as to Count IV, Dolatowski's claim that Merrill Lynch had withdrawn $12,883.07 from her account without authorization. Specifically, Merrill Lynch designated an order issued by the Lake Superior Court on January 27, 1999, directing Merrill Lynch to pay $12,883.07 from Dolatowski's account to the Rondinelli heirs. On July 24, 2003, the trial court granted Merrill Lynch's motion.

Dolatowski filed a motion to correct error on July 11, 2003, which the trial court denied on September 2, 2003. She now appeals.

## DISCUSSION AND DECISION

### I. Motion for Change of Venue from the County

Dolatowski first argues that the trial court erred when it denied her motion for

---

entitled to property under Indiana's intestacy statutes. The term heirs in the context of this case seems to have meant certain persons designated by Rondinelli.

**2.** Dolatowski had originally filed her motion under Indiana Code section 34–1–13–1, which had been repealed a number of years prior to her motion's filing date.

change of venue from Lake County. Specifically, Dolatowski notes that she is a well-known figure in Lake County politics and, thus, cannot obtain a fair trial in that county.

■ Initially, we quote from Indiana Trial Rule 76(A), which governs motions for change of venue from the county:

> In civil actions where the venue may be changed from the county, such change of venue from the county may be had only upon the filing of a verified motion specifically stating the grounds therefor by the party requesting the change. The motion shall be granted only upon a showing that the county where suit is pending is a party or that the party seeking the change will be unlikely to receive a fair trial on account of local prejudice or bias regarding a party or the claim or defense presented by a party. A party shall be entitled to only one change of venue from the county. Denial of a motion for change of venue from the county shall be reviewable only for an abuse of discretion.

The party seeking to change venue has the burden to prove the existence of local prejudice or bias which prevents her from receiving a fair trial. *North Texas Steel Co., Inc. v. R.R. Donnelley & Sons Co.,* 679 N.E.2d 513, 521 (Ind.Ct.App.1997).

■ Here, we note that Dolatowski cannot be heard to complain because no trial occurred. Dolatowski's claims were disposed of before trial. Consequently, the existence of local prejudice or bias was not shown. Moreover, we note that—contrary to Dolatowski's contention—the materials she submitted along with her motion for change of venue from the county tend to show that she is *well* thought of by the

citizens of Lake County. One photograph included in a brochure she tendered shows her accepting the Merrillville Good Citizen Award. Appellee's App. p. 8. Another shows that she fought illegal liquor licensing. Appellee's App. p. 8. In sum, no evidence of prejudice or bias was demonstrated because no trial occurred. Thus, Dolatowski's claim must fail.[3]

## II. Dismissal of Counts I, II, III, and V

Dolatowski next claims that the trial court erred when it granted Merrill Lynch's motion to dismiss Counts I, II, III, and V on the grounds that her claims were time-barred. Specifically, Dolatowski claims that the statute of limitations was tolled by Merrill Lynch's concealment or fraud. In the alternative, Dolatowski argues that Merrill Lynch had a special duty as her fiduciary, and, thus, Merrill Lynch's actions constitute a continuing wrong.

■ We note that the standard of review on appeal of a trial court's grant of a motion to dismiss for failure to state a claim is de novo. *Randolph v. Methodist Hospitals, Inc.,* 793 N.E.2d 231, 234 (Ind. Ct.App.2003). The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Lawson v. First Union Mrtg. Co.,* 786 N.E.2d 279, 281 (Ind.Ct.App.2003). If a complaint states a set of facts that will not support the relief requested, even if they are true, we will affirm the dismissal. *Randolph,* 793 N.E.2d at 234.

---

3. While Dolatowski also points out that she would have produced more information on the public officials she helped convict had she

been afforded a private hearing with the judge, such a procedure is not sanctioned by Trial Rule 76(A).

### A. Concealment of Fraud

Fraud-based claims have a statute of limitations of six years. Ind.Code § 34–11–2–7. The alleged fraud in this case occurred in the fall of 1989, more than fourteen years ago. The doctrine of concealment may toll the statute of limitations if the party opposing the statute's application shows that an active and intentional concealment of the fraud occurred. *Hinds v. McNair*, 235 Ind. 34, 45, 129 N.E.2d 553, 560 (1955).

Here, however, we note that there is no question regarding concealment. Dolatowski's own complaint states that she on or about September 15, 1989[,] received by United States Mail ... what purported to be, and what Plaintiff believed to be, an exact copy of Rondinelli's letter. Appellee's App. p. 23. Thus, the allegedly fraudulent letter was provided to Dolatowski. Consequently, we cannot agree with Dolatowski's claim that the doctrine of concealment tolled the statute of limitations. Simply put, Merrill Lynch did not conceal the allegedly false letter.

### B. Continuing Wrong Doctrine

To avoid the statute of limitations, Dolatowski also argues that Merrill Lynch's fraud constituted a continuing wrong. Thus, claims Dolatowski, the fraud continues to this day and is not time-barred. According to Dolatowski, the continuing wrong is based on the premise that Merrill Lynch had a fiduciary duty as a stock broker to inform her of the fraud.

We note that the continuing wrong doctrine is based on the premise that it is the combination of an entire course of conduct that produces a continuing wrong. A single act in the sequence does not produce the injury. *Crowe, Chizek, and Co., L.L.P. v. Oil Technology, Inc.*, 771 N.E.2d 1203, 1210 (Ind.Ct.App.2002). In *Crowe*, Chizek, the plaintiff—Oil Technolo-

gy—filed a claim in 1997 against Crowe, Chizek for negligence because, in 1993, Crowe, Chizek had failed to inform Oil Technology about an available property tax credit, thereby costing Oil Technology nearly $170,000 in excess tax payments. Crowe, Chizek argued that Oil Technology's claim was time-barred by the three-year accountancy statute of limitations, whereupon Oil Technology claimed that the continuing wrong doctrine tolled the statute of limitations. We noted, however, that there was only a single act of advice-giving by Crowe, Chizek in the spring of 1993. Although Oil Tech may have followed this advice for several years, Oil Tech has failed to establish the existence of a continuing wrong and its claim must also fail under this theory. *Id.*

Here, as in *Crowe, Chizek*, there was only a single transaction between Dolatowski and Merrill Lynch. On May 19, 1989, Dolatowski gave Merrill Lynch written directions to sell Rondinelli's securities. This was done, as Dolatowski admitted in her complaint. Appellee's App. p. 22. In short, Merrill Lynch complied with Rondinelli's written request.

Additionally, we note that despite Dolatowski's claim of a special fiduciary trust between her broker and herself, Indiana Courts have never held that such a special relationship exists. Indeed, the U.S. Court of Appeals for the Seventh Circuit has held that ordinarily, a broker has no fiduciary relationship with an investor. *Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367, 372 (7th Cir.1978). The *Leach* court noted that in some circumstances a broker would stand in a fiduciary relationship to its customer. *Id.* For example, the *Leach* court noted that a customer's reliance on a broker's advice may create some sort of heightened duty on the broker's part. *Id.*

By analogy, this court has held that an insurance agent does not stand in a fidu-

ciary relationship with his insured and is only under a duty to procure insurance. *DeHayes Group v. Pretzels, Inc.*, 786 N.E.2d 779, 782 (Ind.Ct.App.2003). In that case, Pretzels—the insured—informed DeHayes—its broker—about the type of casualty insurance it desired for its factory, and DeHayes obtained the policy. Pretzels's facility burned down, and its insurer—exercising its subrogation rights—named DeHayes in a complaint, asserting that DeHayes should have informed Pretzels about sprinkler system deficiencies that DeHayes discovered in a routine inspection of Pretzels's plant. DeHayes filed a motion for summary judgment, arguing that it had no duty to Pretzels besides the execution of Pretzels's order to purchase insurance. The trial court denied DeHayes's motion, and DeHayes's filed an interlocutory appeal. We reversed the trial court, noting that Pretzels always made the final decision about whether to accept an insurance policy, that DeHayes never counseled Pretzels 'concerning specialized insurance coverage,' and that Pretzels did not claim that DeHayes was 'a highly-skilled insurance expert.' *Id.* at 783.

Here, Dolatowski's own complaint stated that Merrill Lynch was given written orders to sell Rondinelli's bonds. Appellee's App. p. 21. Thus, the facts here are more akin to the instructions Pretzels gave to DeHayes. Dolatowski's complaint does not detail any sort of special counsel or highly-skilled advice given by Merrill Lynch. Accordingly, we must conclude that Merrill Lynch owed no special duty to Dolatowski, and, thus, no continuing wrong was committed. As a result, the trial court did not err in holding that Counts I, II, III, and V were time-barred.

### III. Summary Judgment on Count IV

■ Dolatowski next contends that the trial court erred when it entered summary judgment in favor of Merrill Lynch on count IV of her complaint. Specifically, Dolatowski argues that Merrill Lynch, without authority, withdrew $12,883.07 from her account in 1999 and sent this amount to the Clerk of the Lake Superior Court. Dolatowski charges that she did not authorize this withdrawal and that she had already paid Rondinelli's heirs this amount.

Initially, we note that in her appellant's brief, Dolatowski has omitted our standard of review with respect to summary judgments. Ind. Appellate Rule 46(A)(8)(b) (requiring that [t]he argument must include for each issue a concise statement of the applicable standard of review). We note that summary judgment is appropriate only if the pleadings and designated evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind. 2001).

Here, it is undisputed that an order signed by Judge William B. Davis of the Lake Superior Court was entered on January 27, 1999, requiring Merrill Lynch to turn over $12,883.07 to the Clerk of the Lake Superior Court. Appellee's App. p. 95. The order was obtained by the Rondinelli estate in an action against Dolatowski.

It is beyond dispute that a party must comply with a court order. *Ehle v. Ehle*, 737 N.E.2d 429, 434 (Ind.Ct.App.2000). Here, Merrill Lynch was under court order to deliver $12,883.07 to the Clerk of the Lake Superior Court. Merrill Lynch complied with the January 27, 1999 order.

Thus, it cannot be said that Merrill Lynch wrongly transferred the funds to the Clerk of the Lake Superior Court. Rather, it is apparent that Merrill Lynch correctly complied with a court's order. In sum, no genuine issue of material fact remained as to whether Merrill Lynch complied with a valid court order, so the trial court did not err in entering summary judgment in its favor.

## CONCLUSION

In light of the issues addressed, we conclude that the trial court did not err in denying Dolatowski's motion for a change of venue from the county and in dismissing Counts I, II, III, and V of her complaint because her claims were time-barred. Moreover, the trial court did not err in entering summary judgment against Dolatowski and in favor of Merrill Lynch on Count IV because no genuine issue of material fact remained as to whether Merrill Lynch complied with a valid court order.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.