**HEATON & EADIE PROFESSIONAL SERVICES CORPORATION, Appellant–Defendant,**

v.

**CORNEAL CONSULTANTS OF INDIANA, P.C., Appellee– Plaintiff.**

No. 49A02–0502–CV–148.

Court of Appeals of Indiana.

Feb. 8, 2006.

Susan K. Roberts, Stuart & Branigin LLP, Lafayette, Nicholas C. Nizamoff, Stuart & Branigin LLP, Indianapolis, for Appellant.

Richard H. Riegner, Stewart & Irwin, P.C., Indianapolis, for Appellee.

## OPINION

ROBB, Judge.

Heaton & Eadie Professional Services Corporation ("H & E") submits this interlocutory appeal from the trial court's order denying H & E's motion for summary judgment against Corneal Consultants of Indiana, P.C. ("CCI"). We affirm in part, reverse in part, and remand for further proceedings.

### Issues

H & E raises two issues for review, which we restate as follows:

1. Whether the trial court properly denied H & E's motion for summary judgment on the grounds that CCI's claims were barred by a one-year statute of limitations; and

2. Whether the trial court properly denied H & E's motion for summary judgment on CCI's allegations of breach of fiduciary duty and constructive fraud.

### Facts and Procedural History

CCI, a medical corporation providing ophthalmic and vision correction services, retained H & E, an accounting firm, to determine the value of the interest held in the company by a co-owner of CCI, William E. Whitson, M.D. This arrangement resulted from a governing stock redemption agreement under which CCI was required to purchase Dr. Whitson's interest in the corporation. As part of the valuation assessment, and evidenced by a memorandum sent to Dr. Whitson in February 2001, H & E reviewed and analyzed accounts receivable and collections issues, fixed assets and depreciation, journal entry adjustment, practice overhead, and accrued expenses. H & E was also required to include an appraisal of furniture, fixtures, machinery, and other assets. To this end, H & E employed an independent appraiser to assess CCI's ophthalmic equipment.

Ultimately, CCI disputed the independent appraiser's valuations, believing them to be inflated. The two parties could not

reach agreement, and Dr. Whitson filed a lawsuit seeking to compel arbitration in the matter. On January 28, 2002, CCI filed an answer and counterclaim in which CCI alleged H & E "failed ... to provide the appraiser with sufficient and proper information to determine 'book value' as intended by the Agreement." Appendix to the Brief of Appellant at 53. CCI also alleged that H & E "separately represented Dr. Whitson and/or an entity acquired, owned or controlled by Dr. Whitson[,]" which resulted in a conflict of interest because H & E, "working together with Dr. Whitson, allowed the appraisal process to continue in a manner that benefited Dr. Whitson and harmed CCI." *Id.* It was CCI's contention that the independent appraiser "was instructed or allowed to use a valuation process which contained many incorrect assumptions and resulted in the highest value possible for equipment that would not be used or profitable for CCI." *Id.* The appraiser acknowledged utilizing an improper method under the circumstances. *Id.*

On February 20, 2003, CCI filed a complaint in this case with intent to recover damages from H & E caused by its conduct related to the appraisal. In it, CCI made claims against H & E for negligence, breach of fiduciary duty, breach of contract, fraud, and constructive fraud. Several of the allegations made by CCI against H & E are the same or similar to those in its answer and counterclaim in Whitson's previous action to compel arbitration. These include: (1) H & E failed to act "independently and fairly with respect to the supervision, direction, and coordination of the [v]aluation of CCI's business interests" to the detriment of

CCI and in favor of Dr. Whitson; (2) H & E directed the independent appraiser to use a valuation method other than the one originally agreed upon; and (3) H & E failed to assess the validity of the assumptions used by the independent appraiser during the valuation process. *Id.* at 26–30.

H & E denied the allegations, and raised an affirmative defense based on the statute of limitations imposed by Indiana Code section 25–2.1–15–1. On May 27, 2004, H & E sought summary judgment under the statute of limitations, as well as on grounds that CCI had not alleged or established a requisite element in regard to its claims of breach of fiduciary duty and constructive fraud. After hearing oral argument, the trial court entered an order summarily denying H & E's motion.[1] H & E has now properly brought the matter before this Court on interlocutory appeal.

*Discussion and Decision*

I. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On review of a trial court's denial of summary judgment, we apply the same standard as the trial court: whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Bilimoria Computer Sys., LLC v. America Online, Inc.*, 829 N.E.2d 150, 154 (Ind.Ct.App.2005). The burden is upon the party seeking summary judgment to make a *prima facie* showing that there are no genuine issues of material fact and that

---

1. We note that H & E fails to include in the Appellant's Brief a copy of the trial court's order from which it now appeals, as required by Indiana Appellate Rule 46(A)(10). Despite the summary nature of the trial court's order in this case, adherence to the appellate rules is still required. Counsel for H & E is advised to include such documents in any future matter referred to this Court.

the party is entitled to judgment. *Id.* at 155. If the moving party meets these requirements, the burden shifts to the non-movant to set forth specifically designated facts that establish a dispositive dispute of fact, or where there are undisputed material facts, conflicting inferences on an issue. *KPMG, Peat Marwick, LLP v. Carmel Fin. Corp., Inc.*, 784 N.E.2d 1057, 1059–60 (Ind.Ct.App.2003).

■ To make a determination, neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Bilimoria*, 829 N.E.2d at 154–55. All evidence is liberally construed in a light most favorable to the non-moving party. *KPMG*, 784 N.E.2d at 1060. "Moreover, if the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced outside the statutory period, the non-movant has the burden of establishing an issue of fact material to a theory that overcomes the affirmative defense." *Id.*

## II.  Statute of Limitations

H & E argues that the trial court erroneously denied its motion for summary judgment because CCI's claims were barred under a one-year statute of limitations.

### A.  Applicability

As part of the Accountancy Act of 2001 ("Accountancy Act"), Indiana Code section 25–2.1–1–1 *et. seq.*, the Indiana legislature included a one-year statute of limitations for specifically enumerated causes of action against an accountant or firm of accountants. Ind.Code § 25–2.1–15–1. These are limited to negligence or breach of contract actions brought "by an individual or a business entity claiming to have been injured as a result of financial statements or other information examined, compiled, certified, audited, or reported on by the defendant accountant as a result of an agreement to provide professional accounting services." *Id.* As CCI acknowledges in its brief,

> [t]he statute of limitations imbedded in the Accountancy Act deliberately uses limited terms to give special treatment to certain types of claims that otherwise would have been governed by the general two-year limitations or other more general statutes of limitation. Claims that are not specifically encompassed by the Act—such as ... claims of fraud, constructive fraud, [and] breach of fiduciary duty ...—are governed by the more general rule. They are not within the deliberately narrower scope of the Accountancy Act's statute of limitations. With the Accountancy Act, the Indiana legislature created a narrow statute of limitations.

*Ernst & Young LLP v. Baker O'Neal Holdings, Inc. et al.*, No. 1:03–CV–0132–DFH, 2004 WL 771230, 2004 WL 771230 (S.D.Ind., Mar.24, 2004).

■ Consequently, CCI is correct in arguing that the Accountancy Act's statute of limitations does not apply to all of its claims against H & E. Rather, as delineated by the statute's language, the statute of limitations imposed by Indiana Code section 25–2.1–15–1 governs only CCI's allegations of negligence and breach of contract. Its other claims—breach of fiduciary duty, fraud, and constructive fraud—are not subject to the same constraint.

H & E contends that in this circumstance the substance, not the form, of the claims should determine the appropriate statute of limitations. Specifically, H & E argues that all of CCI's claims should be controlled by the one-year limitation because, "regardless of the labels in its complaint, each claim is in reality a claim for breach of contract or negligence." Appel-

lant's Brief at 16. We acknowledge the appropriateness of such an inquiry to prevent evasive ·pleading tactics,[2] but do not find the present circumstances to necessitate this analysis. Each count alleged in CCI's complaint stands on its own, based upon factual averments preceding it. Furthermore, each factual averment is not relevant to every count. Thus, CCI has alleged and factually supported different acts of wrongdoing under different legal theories. This comports with the Indiana Trial Rules. Ind. Trial Rule 8(E)(2) ("A pleading may also state as many separate claims ... as the pleader has regardless of consistency and whether based on legal or equitable grounds.").

The statute only controls CCI's negligence and breach of contract claims if they arise "as a result of an agreement to provide professional accounting services." Ind.Code § 25–2.1–15–1. CCI argues that the claims do not do so because CCI's agreement with H & E was not for professional accounting services. H & E counters that although the Accountancy Act does not define the phrase "professional accounting services," other statutory language allows a wider interpretation that includes the arrangement between it and CCI.

■ As this is a matter of first impression, we preliminarily note that statutory interpretation is a question of law reserved for the courts. *Vanderburgh County Election Bd. v. Vanderburgh County Democratic Cent. Comm.,* 833 N.E.2d 508, 510 (Ind.Ct.App.2005). We look to the express language of the statute and the rules of statutory construction when interpreting a statute, with the objective of ascertaining and giving effect to

the legislature's intent. *KPMG,* 784 N.E.2d at 1060. We presume that our legislature intended its language be applied logically and consistently with the underlying goals and policy of the statute. *Id.* Therefore, we will interpret the statute in such a manner as to "prevent absurdity and to advance public convenience," while remaining mindful of the statute's purpose, as well as the effect of our interpretation. *Id.*

■ In order to assign meaning to the phrase "professional accounting services," we turn to other related statutory definitions provided within the Accountancy Act so that our interpretation will be harmonious with the larger Act. *Appolon v. Faught,* 796 N.E.2d 297, 300 (Ind.Ct.App. 2003) ("Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme."). These definitions are applicable throughout the entirety of the Accountancy Act. Ind.Code § 25–2.1–1–2. Regarding certified public accountants, the term "professional" is defined as "arising out of or related to the specialized knowledge or skills associated with certified public accountants." Ind.Code § 25–2.1–1–10.3. Moreover, the practice of accountancy is defined as follows:

"Practice of accountancy" means the performance or the offering to perform by a licensee of a service involving:

(1) the use of accounting or auditing skills, including the issuance of reports on financial statements;

(2) management advisory, financial advisory, or consulting services; or

---

**2.** *See Shideler v. Dwyer,* 275 Ind. 270, 417 N.E.2d 281, 286 (1981) ("[T]hough parties confronted with a limitations problem often attempt ... to evade such difficulties by reli-

ance upon pleading technicalities, the courts have consistently rebuffed these efforts in favor of substantive analysis.").

(3) the preparation of tax returns or the furnishing of advice on tax matters.

Ind.Code § 25–2.1–1–10(a).

The record indicates that the assessment by H & E involved review and analysis of accounts receivable and collections issues, fixed assets and depreciation, journal entry adjustment, practice overhead, and accrued expenses. H & E was also to appraise furniture, fixtures, machinery, and other assets as part of the business valuation. Furthermore, deposition testimony given by Michael Heaton classified H & E's services to CCI as "management consulting services," and explained that these services did not require a peer review as would performance of an accounting or auditing service. App. to Br. of Appellant at 71. Both management advisory and consulting services are included in the Accountancy Act's definition of the practice of accountancy. Ind.Code § 25–2.1–1–10(a)(2). Heaton also testified as to H & E's accounting methodology, explaining that "the method of accounting to be used for calculating the separation pursuant to the buy/sell agreement should be consistent with the method of accounting utilized for the regular books and records of the corporation." App. to Br. of Appellant at 130.

Business valuations under repurchase agreements, as in this case, commonly call for the employment of a skill-set unique to accountants. *See, e.g., Shriner v. Sheehan,* 773 N.E.2d 833, 842–43 (Ind.Ct.App. 2002), *trans. denied,* (discussing methods of accounting applied under· repurchase agreements to stock valuations of close corporations). Whether these skills are best classified as accounting/auditing, management advisory, financial advisory, or consulting services is irrelevant to the matter at hand because each technical rubric falls within the practice of accountan-cy. It was because of H & E's set of professional skills as accountants that CCI retained H & E, and it is because of a dispute over accounting methodology employed by H & E or its agent in valuing CCI's ophthalmic equipment that CCI has filed the complaint at issue in this appeal. For these reasons, we hold that the agreement between CCI and H & E called for H & E to render services within the scope of "professional accounting services" as required by Indiana Code section 25–2.1–15–1. Thus, the Accountancy Act's statute of limitations controls CCI's negligence and breach of contract claims.

### B. Satisfaction

■ Next, we consider whether the Accountancy Act's statute of limitations was satisfied regarding CCI's negligence and breach of contract claims. The Accountancy Act specifies:

An action under this chapter must be commenced by the earlier of the following:

(1) One (1) year from the date the alleged act, omission, or neglect is discovered or should have been discovered by the exercise of reasonable diligence.

(2) Three (3) years after the service for which the suit is brought has been performed or the date of the initial issuance of the accountant's report on the financial statements or other information.

Ind.Code § 25–2.1–15–2. As our holding in *KPMG* emphasizes, this statute "provides clear direction as to when a claim accrues and the period within which that claim must be brought" by triggering upon discovery of the "act, omission or neglect" rather than discovery of a cause of action. *KPMG,* 784 N.E.2d at 1061 (citing Ind. Code § 25–2.1–15–2).

■ CCI filed its complaint in this case on February 20, 2003. In it, CCI made allegations against H & E based upon knowledge that H & E was manipulating the valuation process in favor of Dr. Whitson and to CCI's detriment. CCI specifically asserted that H & E directed an independent appraiser to use a valuation method for CCI's ophthalmic equipment different than that intended under the repurchase agreement, and failed to investigate or verify assumptions used by the appraiser to value the equipment. The allegations in CCI's February 2003 complaint were the same or similar to those included in CCI's previous counterclaims against Dr. Whitson, filed January 28, 2002, also alleging the valuation process had proceeded in a fashion that benefited Dr. Whitson and harmed CCI. These prior assertions included that H & E failed to provide the independent appraiser with sufficient information for valuation as contemplated under the repurchase agreement, and instructed him to use an alternative valuation method containing incorrect assumptions. Because CCI's counterclaim against Dr. Whitson evinces it had discovered H & E's alleged acts, omissions, or neglect on January 28, 2002, the window for commencing the current action opened on that date and closed one year subsequent. CCI's complaint in this case, filed February 20, 2003, is outside the year allotted by the statute of limitations. Therefore, summary judgment must be granted against CCI's negligence and breach of contract claims.

■ However, CCI argues that at a minimum "an issue of material fact exists as to when CCI knew or should have known of its claims against H & E." Appellee's Brief at 8. In support, CCI points to additional facts revealed during discovery after it filed the January 2002 counterclaim against Dr. Whitson. As previously mentioned, discovery of a cause of action is not required in order to commence the running of the statute of limitations. Rather, discovery of acts, omissions or neglect underlying the claim, or those that should have been discovered with the exercise of reasonable diligence, trigger the statute. Here, the supplemental facts subsequently discovered do not affect the triggering of the statute because the facts as alleged in CCI's counterclaim were sufficient to indicate discovery of H & E's acts, omissions, or neglect. For the same reason, we find no basis to equitably toll the statute of limitations, as CCI requests, due to the dates of later-discovered depositional and documentary evidence.

CCI raises a second basis for tolling the statute: fraudulent concealment. This equitable doctrine

> operates to estop a defendant from asserting the statute of limitations as a bar to a claim whenever the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim.... [T]his doctrine should be available to the plaintiff to estop a defendant from asserting statute of limitations when he has, *either by deception or by a violation of duty*, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action. When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay.

*Doe v. Shults–Lewis Child and Family Serv., Inc.*, 718 N.E.2d 738, 744–45 (Ind. 1999) (emphasis added, internal quotations and citations omitted). On this basis, CCI suggests the statute should be tolled for the length of time between the filing date of its counterclaim, and the date relevant supplemental information was revealed

during discovery. CCI misapplies the doctrine of fraudulent concealment. Rather than establish H & E acted to deliberately conceal material facts, CCI admits that H & E disclosed the relevant information during discovery, "at the time of document production and deposition." Appellee's Br. at 16. Consequently, we find no reason to equitably toll the one-year statute of limitations for fraudulent concealment.

III. Unconscionable Gain or Advantage

█ H & E argues that the trial court should have granted summary judgment against the claims of breach of fiduciary duty and constructive fraud because CCI failed to show that H & E gained an unconscionable advantage from their interactions. The five constituent elements proving constructive fraud are as follows:

(i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Strong v. Jackson,* 777 N.E.2d 1141, 1146 (Ind.Ct.App.2002), *trans. denied.*

█ Here, CCI has the burden of proving the existence of a duty owed to it by H & E stemming from their relationship, and the gaining of an advantage by H & E at the expense of CCI. *See id.* at 1147. The duty owed may have arisen by virtue of a fiduciary relationship.[3] *Id.* For a fiduciary relationship to exist, there must be confidence by one party in another, and

the party reposing the confidence must also be in a position of inequality, dependence, weakness or lack of knowledge. *Crowe, Chizek, and Co., LLP v. Oil Tech., Inc.,* 771 N.E.2d 1203, 1210 (Ind.Ct.App. 2002), *trans. denied.* The dominant party's wrongful abuse of this confidence for its own gain breaches the relationship. *Id.*

If CCI meets its burden of proof with respect to the duty owed to it because of the existence of a fiduciary relationship, and establishes that an unconscionable advantage accrued to H & E, then a presumption of fraud by H & E attaches. *Strong,* 777 N.E.2d at 1147. The burden then shifts to H & E to show by clear and unequivocal proof at least one of the following: "that [it] made no deceptive material misrepresentations of past or existing facts or did not remain silent when a duty to speak existed, or that the complaining party did not rely on any such misrepresentation or silence, or no injury proximately resulted from the misrepresentation or silence." *Morfin v. Estate of Martinez,* 831 N.E.2d 791, 802 (Ind.Ct. App.2005).

H & E's appeal does not dispute whether it had a fiduciary relationship with CCI, or the extent to which the facts alleged by CCI establish such a relationship. Rather, H & E's argument for summary judgment is solely premised upon an alleged failure by CCI to establish that H & E exploited CCI for its own unconscionable gain or advantage. CCI counters that H & E gained an unconscionable advantage when it "placed [Dr.] Whitson in a position of financial advantage by virtue of the embellished appraisal[,] which resulted in [Dr.] Whitson's continuation as a paying client for H & E." Appellee's Br. at 15. CCI

---

**3.** A second way in which this duty may be shown, not now applicable, is between a buyer and a seller, where one party may possess knowledge not possessed by the other, thereby potentially enjoying a position of superiority over the other. *Id.*

also suggests that any gain to Dr. Whitson as a result of the allegedly embellished valuations should be imputed to H & E as a co-conspirator. *Id.* at 16.

A review of the record indicates that CCI's complaint and amended complaint both allege facts addressing the issue of H & E's bias favoring, and resulting advantage or gain to, Dr. Whitson. In other documents before the trial court, CCI expounds by casting the umbrage of a civil conspiracy between Dr. Whitson and H & E, the benefits of which may be imputed to H & E. The facts alleged in CCI's complaint, when construed in a light most favorable to it, are sufficient to establish a dispute of fact, or conflicting inferences of fact, as to whether H & E obtained an unconscionable advantage or gain by breaching its fiduciary duty to CCI. Therefore, the claims of breach of fiduciary duty and constructive fraud are not properly resolved by summary judgment.

## Conclusion

CCI's claims for negligence and breach of contract are controlled by the Accountancy Act's statute of limitations. Because these claims were made beyond the one-year statute of limitations, and no basis exists upon which to toll the statute, summary judgment must be rendered against them. However, H & E's request for summary judgment against CCI's claims of breach of fiduciary duty and constructive fraud was properly denied because CCI has sufficiently established a dispute of fact, or conflicting inferences of fact, on those material issues in regard to an unconscionable advantage or gain accruing to H & E. For these reasons, we reverse the trial court's ruling denying summary judgment against CCI's claims of negligence and breach of contract, affirm the trial court's ruling denying summary judgment

on the remaining counts, and remand for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings.

KIRSCH, C.J., and MAY, J., concur.